445 P.2d 471

**ARIZONA TITLE INSURANCE AND TRUST COMPANY, an Arizona corporation, Appellant,**

v.

**H. O. PACE and Laura Pace, husband and wife, Appellees.**

**No. 2 CA–CIV 492.**

Court of Appeals of Arizona.

Oct. 1, 1968.

Rehearing Denied Oct. 31, 1968.

Review Denied Dec. 17, 1968.

McKesson, Renaud, Cook, Miller & Cordova, Phoenix, Carl Moring, Coolidge, for appellant.

Charles W. Stokes, Casa Grande, for appellees.

KRUCKER, Judge.

This appeal deals with an action by the plaintiffs below, appellees herein, to recover under a policy of title insurance issued by the appellant Arizona Title Insurance & Trust Co., which resulted in a judgment in favor of the appellees in the sum of $6,400 plus costs.

The record and the briefs disclose the following facts. In December, 1957, one Mary Roach sold certain real property to

a Mr. and Mrs. Bailey, hereinafter called vendees. Appellant acted as escrow agent. In December, 1960, Mrs. Roach sold her vendor's interest to the appellees and appellant issued its title policy No. 7732T insuring good title in the vendors.[1] In July, 1961, the appellant, as escrow agent, gave the vendees notice of forfeiture and recorded a quit-claim deed executed by the vendees to Mary Roach, which was in escrow.

On August 5, 1961, appellant issued to appellees title policy No. 8333T insuring marketable title.[2] On August 13, 1961, a fire took place on the property and an insurance claim in the amount of $4,500 was paid to the Paces.

On March 21, 1962, the Baileys sued the Paces, seeking specific performance of the realty contract, or in the alternative, damages, claiming that the forfeiture was premature. Appellees demanded that appellant defend the action, but this demand was initially refused on the grounds that no title question was involved. Attorney Ellis, however, was subsequently retained by the appellant title insurance company to defend its insured and he actively participated in the trial and negotiations thereafter which resulted in dismissal of the lawsuit by Pace paying $4,750 to the Baileys. Upon dismissal of the lawsuit, the appellees consummated a sale of the real property involved, which sale had been contingent upon resolution of the Pace-Bailey controversy.

This lawsuit was instituted by the Paces to recover the $4,750 plus attorney's fees and costs from the appellant under its title insurance policy. The title company denied a contractual obligation and asserted as a defense the appellees' failure to comply with a policy provision requiring written notice of loss.

1. This insurance policy listed, as an "encumbrance or defect * * * affecting the title to said land or to which said title was subject", an agreement for sale executed by Mary Roach to the Baileys and further recited that the vendor's interest was conveyed to the Paces by the warranty deed.

2. This policy, in its list of encumbrances and defects, made no reference to the Roach-Bailey-Pace transaction.

Appellant contends that appellees are precluded from recovery by reason of their non-compliance with the policy provision requiring notice of any loss to be given to the company within sixty days after its ascertainment. We agree with the appellees that failure to give written notice of the loss within sixty days was not fatal to their claim. Since appellant had actual notice of the loss through Attorney Ellis, who actively participated in the Bailey-Pace litigation and compromise, it cannot be heard to claim that it had no notice and was prejudiced by the lack thereof. See, Fidelity-Phenix Fire Insurance Co. v. Friedman, 117 Ark. 71, 174 S.W. 215 (1915). Actual prejudice must be shown before failure to comply with a notice condition can act as a bar to recovery on the insurance policy. Lindus v. Northern Insurance Co., 103 Ariz. 160, 438 P.2d 311 (1968).

The appellant contends that its contractual liability depends upon the unmarketability of the Paces' title, as provided in the policy (No. 8333–T):

"* * * [Company] does hereby insure the parties named as Insured in Schedule A * * * against direct loss or damage not exceeding the amount stated in Schedule A, together with costs, attorneys' fees and expenses which the Company may be obligated to pay as provided in the Conditions and Stipulation hereof, which the insured shall sustain by reason of:

1. Any defect in or lien or encumbrance on the title to the estate or interest covered hereby in the land described or referred to in Schedule A, existing at the date hereof, not shown or referred to in Schedule B, or excluded from coverage in Schedule B or in the Conditions and Stipulations; or

2. *Unmarketability* of such title. * * *"

(Emphasis supplied)

We need not consider, however, whether or not the filing of a lis pendens (Bailey-Pace lawsuit) rendered the Paces' title unmarketable within the purview of the foregoing policy provision. When the appellant undertook the appellees' defense in the Bailey lawsuit, with full knowledge of the facts and without disclaimer, it was precluded from subsequently avoiding liability on the grounds of non-coverage. 14 Couch on Insurance 2d (Anderson) § 51:-159; 45 C.J.S. Insurance § 714; see also, Annot. 38 A.L.R.2d 1148 et seq.

The policy also provides:

"The Company reserves the option to pay, settle, or compromise for, or in the name of, the insured, any claim insured against or to pay this policy in full at any time. * * *"

The record abounds with testimony as to Attorney Ellis's active participation in and approval of the compromise of the Bailey-Pace lawsuit. In fact, his participation included volunteering to negotiate settlement with Baileys' counsel. At the instant trial, he was quoted as having said:

"I go fishing with those guys. I think I can work this out in a few days." [The Bailey-Pace settlement]

The question to be resolved, however, is whether Ellis's compromise of the Baileys' claim against the Paces was binding upon his client, the appellant-insurer. Their relationship was that of principal and agent. In re Thrun's Estate, 20 Wis.2d 275, 121 N.W.2d 759 (1963); Monell v. College of Physicians and Surgeons, 198 Cal.App.2d 38, 17 Cal.Rptr. 744 (1961); Muncey v. Children's Home Finding and Aid Society of Lewiston, 84 Idaho 147, 369 P.2d 586 (1962). The general authority arising out of an attorney's retainer does not *ipso facto* cloak him with implied or inherent authority to settle or compromise claims on behalf of his client. United Liquor Company v. Stephenson, 84 Ariz. 1, 322 P.2d 886 (1958). However, if the client places the attorney in a position where third persons of ordinary prudence and discretion would be justified in assuming the attorney was acting within his authority, then the client is bound by the acts of the attorney within

the scope of his apparent authority. Cohen v. Goldman, 85 R.I. 434, 132 A.2d 414 (1957); 7 C.J.S. Attorney and Client § 79; Restatement Agency 2d § 27.

█ The trial court apparently found, and there is evidence to support such finding, that the appellant's conduct as to the Bailey-Pace matter falls within this category. The appellant retained an attorney who, although named as an attorney of record for the defendants-insured, was primarily involved in the litigation to protect the interests of the insurer. The attorney regularly advised the insurer, through its managing agent, of the progress of the litigation. The insurer was fully aware of the fact that the appellees construed Ellis's representation of them to be nominal only and that Ellis was acting for the insurer. Therefore, when Ellis advised compromise of the Baileys' claim and volunteered to effect it on behalf of the appellees, they were justified in assuming that he had authority to do so. Under such circumstances, appellant is estopped to assert otherwise and is thereby bound by the act of its attorney.

█ Appellant claims further error as to the amount awarded against it as attorney's fees incurred by the insured. Prior to the time that appellant secured Mr. Ellis to represent the Paces in the Bailey-Pace suit, the Paces had hired their own attorneys. After Mr. Ellis undertook to represent the Paces at the instance of appellant, the Paces continued to retain their own counsel as well.

The trial court allowed the Paces all of the attorneys' fees so incurred, both before and after appellant undertook their defense, except for the fee of Mr. Ellis who was paid directly by appellant.

The policy further provides:

"The Company will pay, in addition to any loss insured against by this policy, all costs imposed upon the insured in litigation carried on by the insured with the written authorization of the company, *but not otherwise.* * * *" (Emphasis supplied)

The policy is plain and clear on this point. No written authorization is in evidence. In light of this provision, we feel that the trial court erred in awarding appellees all of the costs prayed for. Since appellant did participate in the defense of the Bailey-Pace lawsuit, and no written authorization was given appellees to retain counsel to *continue* in the defense, we think that appellees are limited to recovery of attorney's fees expended for the time before appellant entered on the defense of that case. See, Watson v. Ocean Accident and Guarantee Corp., 28 Ariz. 573, 238 P. 338 (1925). We therefore conclude that determination of the value of attorneys' services rendered before Ellis began to participate in the defense requires a hearing thereon. The judgment is set aside and the case remanded for determination of this amount. Judgment shall then be entered for appellees in the sum of $4,750 plus the allowable costs and attorneys' fees as determined in accordance herewith.

Remanded with directions.

HATHAWAY, C. J., and MOLLOY, J., concur.